Filed 7/2/26  Wizmann v. Simon & Schuster CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PATRICK WIZMANN, | B339923 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 24STCV00462) |
| v. | |
| SIMON & SCHUSTER, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Bruce G. Iwasaki, Judge.  Affirmed.

Patrick Wizmann, in pro. per., for Plaintiff and Appellant.

Fox Rothschild, David Aronoff and Joshua Bornstein, for Defendant and Respondent Forefront Books, LLC.

Sparks Law Firm and Jerry Sparks, for Defendant and Respondent Simon & Schuster, LLC.

_____

Appellant Patrick Wizmann sued the publishers of his brother-in-law's memoir, respondents Simon & Schuster, LLC (Simon & Schuster) and Forefront Books, LLC (Forefront Books) (collectively, respondents). Wizmann claimed that the synopsis printed on the inside flap of the memoir's dust jacket contained misleading statements about the author's life. The trial court granted respondents' motion to strike Wizmann's lawsuit pursuant to the anti-SLAPP statute (Code Civ. Proc., § 425.16), and Wizmann appealed.[1] Finding no error, we affirm.

## BACKGROUND

### I. Facts

In or around November 2023, Forefront Books published "Dreams Don't Die: The Story of a Man on a Mission to Inspire a Generation of Dreamers" (the book), the memoir of prominent real estate developer Izek Shomof (Shomof). Simon & Schuster distributed the book.

Over the course of his career, Shomof has been involved in many high-profile real estate projects in Los Angeles, including redeveloping several historic hotels and attempting to build an ambitious housing support center. These projects have generated consistent media attention and occasional controversy.

The inside flap of the book's dust jacket states, as relevant here, that "[i]t is the memoir of a man who had every opportunity to take unethical and often-illegal shortcuts but who instead chose the lesser-trod path of honesty and integrity" (the

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

synopsis).  The synopsis was also included in various promotional materials, including material published on respondents' websites.

## II.  Complaint

In January 2024, Wizmann sued respondents for violating the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.) and the False Advertising Law (FAL) (Bus. & Prof. Code, § 17500 et seq.), and for related declaratory relief.  Wizmann alleged that, by stating that Shomof "chose the lesser-trod path of honesty and integrity[,]" the synopsis falsely led consumers to believe that he is a "scrupulous[,]" "honest[,] [and] law-abiding businessman[,]" even though Shomof had been charged with three counts of felony receipt of stolen property (former Pen. Code, § 496(1)) in the 1980s.

Wizmann sought monetary damages, civil penalties, and an injunction ordering respondents to (1) replace the dust jackets of "all copies of the [b]ook currently in circulation" and (2) delete the offending sentence from their websites.

## III.  Anti-SLAPP Motion; Opposition

In March 2024, Forefront Books filed an anti-SLAPP motion to strike Wizmann's complaint.  Simon & Schuster joined the motion.

The motion included a declaration from Shomof explaining that he pled nolo contendere to one charge of felony receipt of stolen property in 1989.  After he completed a term of probation and paid full restitution to the property owner, the conviction was reduced to a misdemeanor.  Shomof "did not share this story in the [b]ook" or with respondents, as he did not consider that the conviction "detract[ed] from the story of [his] success built on honesty and integrity."  Shomof believed that Wizmann, who had filed two unrelated lawsuits against him in the 14 months

3

preceding this suit, "sued [respondents] just to harass and embarrass" Shomof.

Wizmann opposed the motion. In his attached declaration, Wizmann wrote that he "ha[d] known Shomof since [Wizmann] was a teenager[,]" and had "been business partners" with him throughout their lives. Upon the book's release, Wizmann claimed he "was surprised by the claims [respondents] made regarding Shomof's law abiding, untarnished life." Wizmann "was induced into purchasing the [b]ook out of curiosity regarding the veracity of" the synopsis, especially "how the [b]ook would reconcile the claims in the [synopsis] with the reality of Shomof's history." After "read[ing] the [b]ook in its entirety[,]" Wizmann found that "[i]t d[id] not address Shomof's arrest on felony charges[] and subsequent plea of no contest."

## IV. Ruling; Appeal

In May 2024, the matter proceeded to a hearing. After both parties presented argument, the trial court granted the anti-SLAPP motion in full and dismissed Wizmann's complaint with prejudice. Wizmann timely appealed.

## DISCUSSION

## I. The Anti-SLAPP Statute

"A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so." (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21 (*Simpson*).) "In 1992, out of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16, the anti-SLAPP statute[.]" (*Ibid.*; see § 425.16, subd. (a).)

Section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in

4

furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." This procedure is intended to "weed[] out, at an early stage, meritless claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384, italics omitted.)

"[A] trial court tasked with ruling on an anti-SLAPP motion must ask two questions: (1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected activity' [citation], and, if so, (2) has the nonmoving party 'established . . . a probability that [it] will prevail' on the challenged cause of action by showing that the claim has 'minimal merit' [citations]?" (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 887.)

## II.    Standard of Review

"We review de novo the grant . . . of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) In so doing, we "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "[W]e do not weigh evidence or resolve conflicting factual claims[,]" and "must draw all reasonable inferences from the evidence in favor of [Wizmann] as the plaintiff." (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 720.)

## III.    Commercial Speech Exemption

We begin with Wizmann's argument that the anti-SLAPP statute does not apply to his lawsuit because it targets

5

respondents' commercial speech.  (§ 425.17, subd. (c); see *Xu v. Huang* (2021) 73 Cal.App.5th 802, 807 (*Xu*) ["Courts are admonished to examine section 425.17 as a threshold issue before proceeding to an analysis under section 425.16." (Italics omitted)].)

A.      *Forfeiture*

Wizmann has forfeited this issue.  He not only failed to raise the commercial speech exemption below, but expressly disavowed any "conten[tion] that the . . . exemption . . . precludes [respondent's anti-SLAPP] [m]otion."  (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 [generally, " 'theories not raised in the trial court cannot be asserted for the first time on appeal' "].)  However, the trial court addressed the commercial speech exemption at length in its ruling after finding that, notwithstanding Wizmann's disavowal, the exemption formed "the only basis for [his] argument[s]."  We therefore address Wizmann's arguments on their merits.  (See *Fergus v. Songer* (2007) 150 Cal.App.4th 552, 572 [intent of rule prohibiting new theories on appeal is to prevent surprise that "is both unfair to the trial court and unjust to the opposing litigant"].)

B.      *The Commercial Speech Exemption Does Not Apply*

"In 2003, concerned about the 'disturbing abuse' of the anti-SLAPP statute, the Legislature enacted section 425.17 to exempt certain actions from [protection]."  (*Simpson, supra*, 49 Cal.4th at p. 21.)  "[T]he plaintiff[] bear[s] the burden of proving" that an exception applies.  (*Xu, supra*, 73 Cal.App.5th at p. 813.)

Subdivision (c) of section 425.17 provides that lawsuits targeting certain kinds of commercial speech are not subject to

the anti-SLAPP statute.[2]  But the commercial speech exemption "do[es] not apply to . . . [¶¶] [a]ny action against any person . . . based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, *literary*, musical, political, or artistic work[.]"  (§ 425.17, subd. (d)(2), italics added.)

Wizmann sued respondents based upon their promotion of the book, a literary work.  Therefore, the commercial speech exemption does not apply to his lawsuit, regardless of whether it satisfies the conditions set forth in 425.17, subdivision (c).  (§ 425.17, subd. (d)(2).)

Wizmann resists this conclusion by relying on *Keimer v. Buena Vista Books, Inc.* (1999) 75 Cal.App.4th 1220, 1230 (*Keimer*), which "h[e]ld that the statements made on . . . book . . . covers are commercial speech[.]"  *Keimer* does not help Wizmann.  Classifying a statement as commercial speech is not enough to establish the commercial speech exemption.  A plaintiff must also establish that the commercial speech at issue satisfies the conditions of the exemption statute.  (See *FilmOn.com, Inc. v.*

---

[2]      In relevant part, the exemption provides that the anti-SLAPP statute "does not apply to any cause of action brought against a person primarily engaged in the business of selling . . . goods, . . . arising from any statement or conduct by that person[,] if both of the following conditions exist: [¶] (1) [t]he statement or conduct consists of representations of fact about that person's or a business competitor's . . . goods . . . that is made for the purpose of . . . promoting, or securing sales . . . of, . . . the person's goods . . . , or the statement or conduct was made in the course of delivering the person's goods," and "(2) [t]he intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer[.]"  (§ 425.17, subd. (c).)

*DoubleVerify Inc.* (2019) 7 Cal.5th 133, 147 (*FilmOn*) ["[S]ection 425.17, subdivision (c) and subsequent case law indicate that the provision exempts 'only a subset of commercial speech — specifically, comparative advertising.' "]; *All One God Faith, Inc. v. Organic & Sustainable Industry Standards, Inc.* (2010) 183 Cal.App.4th 1186, 1217 ["[T]he better understanding of section 425.17, subdivision (c), is that all of the speech exempted from the anti-SLAPP statute is commercial speech, but not all commercial speech is exempted thereunder."])  A lawsuit that otherwise qualifies for the exemption is still subject to anti-SLAPP if it targets commercial speech that promotes a literary work.  (§ 425.17, subd. (d)(2).)

Wizmann attempts to circumvent section 425.17, subsection (d), by suggesting that books are not "literary works," which is meritless on its face.  Wizmann further suggests that *Keimer*—a case decided four years *before* the enactment of section 425.17, and which does not involve the anti-SLAPP statute—takes precedence over the statutory framework carefully wrought by our Legislature.  It does not.

## IV.  The Trial Court Properly Granted Respondents' Motion to Strike

### A.  *Respondents Established that Wizmann's Claims Arise from Protected Activity*

Under the anti-SLAPP statute, "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim.  [Citations.]  Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citation.]" (*Park, supra*, 2 Cal.5th at pp. 1062–1063.)  Such acts include "any written or oral statement or writing made in a

8

place open to the public or a public forum in connection with an issue of public interest[.]"  (§ 425.16, subd. (e)(3).)

Wizmann's claims arise from the synopsis posted on respondents' websites and printed on the book's dust jacket.  In both forms, the synopsis qualifies as an "act in furtherance of [the] right of . . . free speech" under section 425.16, subdivision (e)(3).  (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 ["Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute."]; *Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1039 [a publication constitutes a public forum if "it can be purchased and read by members of the public"].)  And the synopsis was made "in connection with an issue of public interest[,]" as its subject (i.e., Shomof) " '[i]s a person or entity in the public eye[.]' "  (*Albanese v. Menounos* (2013) 218 Cal.App.4th 923, 934; see also *Hoang v. Tran* (2021) 60 Cal.App.5th 513, 528 [" ' "[T]here is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities." ' "].)

Although Wizmann does not dispute any of these conclusions, his repeated references to the synopsis as "unprotected commercial speech" suggests the argument that commercial speech does not constitute protected activity under the anti-SLAPP statute.  That argument fails.  (*FilmOn*, *supra*, 7 Cal.5th at p. 154 [" '[W]hether speech has a commercial or promotional aspect is not dispositive' of whether it is made in connection with an issue of public interest."].)

Wizmann also emphasizes that false commercial speech is not protected by the First Amendment.  But constitutional protection is a separate question from anti-SLAPP protection.

9

(*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1548 ["To make their threshold showing under the first prong of the [section 425.16] analysis, [defendants] need not prove that the targeted activity is in fact constitutionally protected."]; see also *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422 [courts "determining whether conduct is protected under [section 425.16] look not to First Amendment law, but to the statutory definitions in section 425.16, subdivision (e)"].)

B.       *Wizmann Did Not Show a Reasonable Probability of Success on the Merits*

"A claim has [the] 'minimal merit' " required to survive an anti-SLAPP motion "if it is ' "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [Wizmann] is credited." ' [Citations.]" (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 537, italics omitted.)  Therefore, "when the . . . court examines [Wizmann's evidence] filed in support of [his] second step burden, the court must consider whether [he] has presented sufficient evidence to establish a prima facie case on his causes of action[.]" (*Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 184, italics omitted.)  An anti-SLAPP motion should only be granted if the claimant fails to meet this burden.  (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188–1189.)

One element common to Wizmann's false advertising and unfair competition claims is the promulgation of a false or misleading statement that deceives reasonable consumers about the goods being sold.  (Bus. & Prof. Code, §§ 17500 ["It is unlawful for any person, . . . with intent directly or indirectly to

10

dispose of . . . property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public . . . *any statement, concerning that . . . property . . . which is untrue or misleading*, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading"] (italics added), 17200 [unfair competition includes "deceptive, untrue or misleading advertising"]; *Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1136 (*Shaeffer*) [under the UCL and FAL, a plaintiff must show that " ' " 'members of the public are likely to be deceived' " [citation]' and must do so as adjudged through the eyes of 'the reasonable consumer' [citation]"].)

Here, Wizmann has not demonstrated that the synopsis is false or misleading to a reasonable consumer. The synopsis says that the book shows that Shomof "had every opportunity to take unethical and often-illegal shortcuts but . . . instead chose the lesser-trod path of honesty and integrity." Wizmann's contention that the 1989 conviction renders the synopsis false is unreasonable. One conviction occurring nearly 40 years ago does not render false the synopsis's summary of the overall trajectory of Shomof's life and career. (See *Shaeffer, supra*, 44 Cal.App.5th at p. 1139 [UCL and FAL claims fail if "a reasonable consumer is unlikely to make the series of inferential leaps" required to reach the plaintiff's conclusion]; compare with *Keimer, supra*, 75 Cal.App.4th at p. 1224 [statements on the cover of a guide promising to contain an investment strategy with a 23.4 percent annual rate of return could be proven false by evidence that the strategy's true annual rate of return averaged 9.1 percent].)

Moreover, the synopsis summarizes the content of the book, promising readers that the book contains the tale of "a man who

11

had every opportunity to take unethical and often-illegal shortcuts but who instead chose the lesser-trod path of honesty and integrity." Wizmann alleges that Shomof's prior conviction contradicts that premise, but concedes that the book "does not address Shomof's arrest on felony charges[] and subsequent plea[.]" The synopsis thus truthfully advertises the book. (See *Keimer*, *supra*, 75 Cal.App.4th at p. 1232 [distinguishing between " ' "advertising which summarizes *an argument or opinion* contained in the book" ' . . . [and promotional] statements that are objectively verifiable as true or false"] (italics in original); see also *Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 882 ["[T]he principle motivating California's protection of advertisements adjunct to expressive works 'is the need to protect advertisers from tort actions that would otherwise threaten the ability of publishers to truthfully promote particular works' by accurately conveying the content of those works, even when that content is itself false."].)

As respondents note, "[w]hat [Wizmann] truly is arguing is that . . . the [b]ook supposedly whitewashes Shomof's life story by failing to address [Shomof's conviction]. Put differently, his grievance is with the content of the [b]ook itself rather than the description about the [b]ook's content on the dust jacket." Wizmann's complaint reveals a glaring constitutional issue that he makes no attempt to address. Nor could he. (*Keimer*, *supra*, 75 Cal.App.4th at p. 1231 ["[N]o one involved in modern jurisprudence can reasonably dispute[] [that] the *content* of . . . books is entitled to the full protection of the First Amendment."].)

Wizmann cannot establish a prima facie case of false advertising or unfair competition. Based on his evidence, there is no reasonable probability that he can show the synopsis is false

or misleading to a reasonable consumer, or that the synopsis is not subject to heightened constitutional protections.  And because Wizmann's substantive claims cannot proceed under the anti-SLAPP statute, neither can his derivative claim for declaratory relief.  (*City of Lancaster v. Netflix, Inc.* (2024) 99 Cal.App.5th 1093, 1099 [where a "declaratory relief claim is wholly derivative of [unsuccessful] claim[s] for damages, it also fails"].)

## DISPOSITION

The order is affirmed.  Respondents are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
GOORVITCH

We concur:


_____, Acting P. J.
CHAVEZ


_____, J.
RICHARDSON